**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BOUNTY MINERALS, LLC, | ) | CASE NO. 5:17cv1695 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| CHESAPEAKE EXPLORATION, LLC, et | ) | AND ORDER |
| al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are two motions. First, defendants Chesapeake Energy Marketing, LLC, Chesapeake Operating, LLC, and Chesapeake Exploration, LLC (collectively "Chesapeake") move to compel arbitration and to stay this federal action. (Doc. No. 8 ["Am. Mot. Compel/Stay"].) Plaintiff Bounty Minerals, LLC ("Bounty Minerals") opposes the motion (Doc. No. 13 ["Am. Mot. Compel/Stay Opp'n"]), and Chesapeake replied (Doc. No. 19 ["Am. Mot. Compel/Stay Reply"]). Second, Bounty Minerals has moved to amend the complaint. (Doc. Nos. 16/17 ["Mot. Amend"].)) Chesapeake has filed a response (Doc. No. 18 [Mot. Amend Resp."]), and Bounty Minerals has filed a reply. (Doc. No. 20 ["Mot. Amend Reply"].)

## I. BACKGROUND

Bounty Minerals is a company that purchases oil and gas rights, including lease royalty interests, in property located in Ohio and surrounding states. (Doc. No. 1-1 ["Compl."] ¶ 7.) Chesapeake is comprised of a gas company and affiliated entities that hold working interests in oil and gas leases. (*Id*. ¶¶ 24-25.) On July 11, 2017, Bounty Minerals filed suit in state court against Chesapeake to recover royalties it believes are owed to it by Chesapeake under the terms

of several oil and gas leases, all of which "have substantially similar royalty clauses[.]" (*Id.* ¶ 31.) It is Bounty Minerals' theory that Chesapeake violated the terms of these royalty provisions by paying royalties on net (instead of gross) proceeds, remitting untimely payments, and failing to pay the required interest owed under the contracts. The original complaint raises two claims for breach of contract and a separate claim for declaratory relief.

Only one of the leases identified in the complaint—CAM-Ohio Lease—contains an arbitration clause. That provision requires that "[a]ny questions concerning [the] Lease or performance thereunder . . . be ascertained and determined by three disinterested arbitrators[.]" (Doc. No. 1-1, Ex. 1 (CAM-Ohio Lease), Art. VII, § 1 at 48.[1]) On August 14, 2017, Chesapeake removed the action to federal court. Shortly thereafter, Chesapeake moved to compel arbitration on the CAM-Ohio Lease under the terms of the lease's arbitration provision. As part of the motion, Chesapeake sought a stay of the remainder of the case while the parties pursue private arbitration under the CAM-Ohio Lease. (Am. Mot. Compel/Stay at 560-62.[2])

The parties' procedural chess game continued. "To partially moot the relief sought in the" motion to compel, Bounty Minerals moved to amend the complaint to remove the CAM-Ohio Lease from the litigation. (Mot. Amend at 1049-50.) In its motion, Bounty Minerals explains that, rather than contest "the propriety or enforceability of the identified arbitration clause in the 'CAM-Ohio Lease,'" Bounty Minerals proposes to simply remove the issue of arbitrability from the litigation by not seeking to recover on that particular lease in this federal lawsuit. (*Id.* at

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

[2] Chesapeake moved to compel arbitration and to stay the proceedings on August 21, 2017. (Doc. No. 7 (Motion to Compel Arbitration and to Stay).) On August 23, 2017, Chesapeake filed an amended motion to correct a typographical error that misidentified one of the defendants in this action. (*See* Am. Mot. Compel/Stay at 551, n.1.) Accordingly, Chesapeake's motion to compel arbitration and to stay is moot.

1051.) Should the Court grant its motion to amend, Bounty Minerals suggests that the only issue left for the Court to resolve will be "whether [Chesapeake's] request to stay this case is appropriate." (*Id*.)

Once again, Chesapeake counter-moved. On September 18, 2017 (ten days after Bounty Minerals moved to amend), Chesapeake filed a demand for arbitration with the American Arbitration Association ("AAA"). (Doc. No. 19-1 ["Arb. Demand"], beginning at 1064.) In support of the demand, Chesapeake filed with the AAA a request for declaratory relief. (Doc. No. 19-1 ["Decl. Demand"], beginning at 1066.) By these filings, Chesapeake formally seeks to arbitrate the dispute regarding the royalties owed under the CAM-Ohio Lease. Although Bounty Minerals has challenged the propriety of Chesapeake's arbitration demand by filing a motion to dismiss, by letter dated November 15, 2017, the AAA determined that the matter will proceed to assignment of an arbitration panel, and the motion to dismiss will be a matter for the panel to decide. (Doc. No. 21-1.)

## II. BOUNTY MINERALS' MOTION TO AMEND

Because the Court's ruling on the motion to amend impacts the motion to compel and to stay, the Court begins with Bounty Minerals' motion. As set forth above, Bounty Minerals' motion to amend is limited to removing the CAM-Ohio Lease from the litigation. Rule 15 of the Federal Rules of Civil Procedure governs requests to amend. Rule 15(a) provides for leave as a matter of course within 21 days of filing the initial pleading or, if a response is required, within 21 days after the filing of a response or a motion under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). In all other cases, leave must be granted by the court, and a court is directed to extend such leave "freely" when "justice so requires." Fed. R. Civ. P. 15(a)(2).

Where leave is required, the decision whether to permit the amendment is committed to the discretion of the trial court. *See Estes v. Ky. Util. Co*., 636 F.2d 1131, 1133 (6th Cir. 1980) (citation omitted); *see generally Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330-32, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971) (citations omitted). The trial court's discretion, however, is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on the merits." *Marks v. Shell Oil Co*., 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted).

"Leave to amend may be denied when it would result in undue delay, prejudice to the opposing party, or repeated failure to cure deficiencies in the complaint." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (citing *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Duchon v. Cajon Co*., 791 F.2d 43, 48 (6th Cir. 1986)). When a party has delayed in seeking amendment, the court weighs the cause shown for the delay against the resulting prejudice to the opposing party. *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 873-74 (6th Cir. 1973) (citations omitted). "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps*, 30 F.3d at 662-63 (citation omitted). The longer the period of unexplained delay, the less prejudice the adverse party will be required to show to defeat the motion. *Id*. at 662 (citation omitted).

Here, Chesapeake does not oppose Bounty Minerals' motion, to the extent that it seeks to remove the CAM-Ohio Lease from the litigation. Moreover, the Court finds no evidence of

significant prejudice to the opposing party, a likelihood of substantial delay in the proceedings, or a repeated failure to cure deficiencies in the pleadings. The proposed amended complaint and the motion to amend were filed early in the proceedings. Additionally, the present motion represents Bounty Minerals' first request to amend, and Bounty Minerals has not demonstrated a repeated failure to cure deficiencies in the pleadings. Finally, while the impetus for the motion may have been to frustrate Chesapeake's efforts to stay these proceedings, the Court cannot find that the motion is made in bad faith.

In light of the mandate of Rule 15(a) that leave should be "freely" given, and inasmuch as Chesapeake does not oppose the amendment, the Court rules that "justice so requires" that the motion to amend be granted. *See* Fed. R. Civ. P. 15(a). The Court, therefore, grants Bounty Minerals' motion for leave to file an amended complaint. Bounty Minerals shall file the proposed amended complaint (Doc. No. 16-1) as its first amended complaint within 3 business days of the date of this Memorandum Opinion and Order.

III. **CHESAPEAKE'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY**

In support of the motion to stay, Chesapeake relies heavily upon the unreported decision in *Hope Christian Fellowship v. Chesapeake Energy Corp*., No. 4:15CV02275, 2016 WL 5661607 (N.D. Ohio Sept. 29, 2016). There, under somewhat analogous facts, lease owners sought to recover against Chesapeake for alleged unpaid gas and oil royalties, and some but not all of the leases at issue in the class action contained arbitration agreements. Chesapeake sought to compel arbitration on the leases that contained such agreements, and further sought to stay the remainder of the case pending the completion of the arbitration process. The court granted the motion. In staying the case as to the royalty owners whose leases contained arbitration

agreements, the court observed that § 3 of the Federal Arbitration Act ("FAA") required the court to stay the trial of the action for all issues that are referable to arbitration. *Hope Christian Fellowship*, 2016 WL 5661607, at *10 (citing 9 U.S.C. § 3; *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 625, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009)).

The court also elected to invoke its inherent authority to stay consideration of the leases that did not include arbitration clauses, finding significant overlap as to the facts, parties, and counsel. *Id*. (citing *F.T.C. v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 626-27 (6th Cir. 2014) (further citation omitted)). Further, the court observed that it was "not persuaded" that the arbitrations would not "affect" the disposition of the remaining cases. *Id*.

While recognizing that the Court cannot compel the parties to arbitrate if the CAM-Ohio Lease is no longer in the case, Chesapeake urges the Court to rely on its inherent power to stay the case while that particular lease is arbitrated. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co*., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (citations omitted); *see also Hill v. Mitchell*, 30 F. Supp. 2d 997, 1000 (S.D. Ohio 1998) ("[T]he Court has the inherent power to stay proceedings pending the resolution of the same or related issues in another forum.") In determining whether it is appropriate to stay litigation, the Court should consider the following factors: "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay,

given its duration." *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (citing *Landis*, 299 U.S. at 255). When exercising this inherent power, a court "must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Ct*., 565 F.2d 393, 396 (6th Cir. 1977) (citing *Landis*, 299 U.S. at 254-55).

Notwithstanding the stay issued in *Hope Christian Fellowship*, the Court finds that a consideration of the relevant factors, coupled with differences in how arbitration has been pursued in the present case, counsels against staying this action while the parties arbitrate the terms of a lease that is no longer a part of the lawsuit. As to the first factor, an arbitrator's ruling on the CAM-Ohio Lease would not be binding on this Court and Chesapeake does not argue otherwise. Several of the cases cited by Chesapeake where stays were granted under the court's inherent power involved situations where the courts were awaiting potentially dispositive rulings from other forums. *See, e.g., Schartel v. OneSource Tech., LLC*, No. 1:15 CV 1434, 2015 WL 7430056, at \*1-2 (N.D. Ohio Nov. 17, 2015) (stay pending Supreme Court decisions on issues germane to the case); *Canter v. Calderhead, Lockemeyer & Peschke Law Office*, No. 1:13-cv-514, 2014 WL 64155, at \*3 (S.D. Ohio Jan. 8, 2014) (stay issued pending ruling in state court that could "resolve many, if not all, of the legal and factual issues raised by plaintiff's complaint"). Still, Chesapeake surmises that, "after the arbitration is complete, the parties will likely resolve the remaining disputes regarding the additional leases[.]" (Am. Mot. Compel/Stay Reply at 1060.) The Court does not share Chesapeake's optimism, as there is nothing to prevent the loser in arbitration from advocating for a different result in federal court. Even though the leases involve "substantially similar royalty clauses," the effect of any ruling is not dispositive

on this Court and, therefore, the first factor weighs against a stay.[3]

As to the second factor—judicial economy—the Court finds that there is some limited economy to be gained by permitting a stay. There is clear overlap in the parties and the issues that will be raised, and it is likely that proceeding simultaneously in two forums may result in duplication of certain discovery efforts. Still, this lawsuit involves leases that are separate from the lease that will be arbitrated before the AAA. Regardless of the outcome in arbitration as to that lease, individualized discovery will have to be conducted as to each separate lease still at issue before questions can be answered relating to the proper royalty payments that may be due under each lease. This factor weighs slightly in favor of a stay.

The third factor is neutral. The leases at issue involve contractual agreements between private parties. There are no matters of public policy or questions of important public interests for the Court to resolve. Instead, the Court will be asked to interpret the terms of a private contact that was negotiated at arms-length between corporations presumably with equal bargaining positions.

The fourth and final factor contemplates the hardship or prejudice to the non-moving party. Bounty Minerals has challenged Chesapeake's arbitration demand, suggesting that the demand suffers from several technical defects. The Court has neither the authority nor the inclination to pass on the propriety of the arbitration demand. Nonetheless, the controversy surrounding the private arbitration demonstrates that a final arbitration decision in the near future

---

[3] With respect, the Court believes that the court in *Hope Christian Fellowship* misapplied this first factor by finding that arbitration could potentially have an *effect* upon the federal litigation. The pertinent question is whether the outcome in another forum would be dispositive as to one or more issues in the federal litigation. *See Michael*, 325 F. Supp. 2d at 833 (noting that "[i]t makes little sense to undertake the herculean task of plodding through the motions when one decision by the Supreme Court could invalidate the entire case[]"). While an arbitrator's decision could be helpful, it would not be dispositive.

is unlikely. In contrast to the situation in *Hope Christian Fellowship*, here, the Court cannot rely on its authority to compel the parties to arbitrate to be assured that the arbitration will survive the motion to dismiss. Because a swift decision in arbitration is far from a guarantee, the Court finds that the potential hardship to Bounty Minerals in having to wait to litigate the leases still at issue in this case weighs against the stay. *See, e.g., In re GOE Lima, LLC*, Bankr. No. 08-35508, 2012 WL 930324, at *4 (Bankr. N.D. Ohio Mar. 19, 2012) (finding that fact that the arbitration proceedings had not progressed in two years to the point of addressing substantive issues weighed against a stay of proceedings in bankruptcy court).

Having weighed the relevant factors, the Court finds that the competing interests do not favor a stay of the present litigation. Accordingly, the Court denies Chesapeake's amended motion to compel arbitration and to stay the case.

## IV. CONCLUSION

For all of the foregoing reasons, Bounty Minerals' motion to amend the complaint is granted, and Chesapeake's amended motion to compel arbitration and to stay the proceedings is denied.

**IT IS SO ORDERED**.


Dated: December 1, 2017

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**