# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

Bounty Minerals, LLC,

Case No. 5:17cv1695

Plaintiff,

-vs-

JUDGE PAMELA A. BARKER

Chesapeake Exploration, LLC,
et al.,

Defendants

MEMORANDUM OPINION AND
ORDER

Currently pending are the following motions: (1) Motion for Leave to file *Amicus Curiae*
Brief filed by the certified class of landowners in *Zehentbauer Family Land LP, et al. v. Chesapeake
Exploration LLC, et al.,* Case No. 4:15cv2449 (N.D. Ohio) (Pearson, J.) (Doc. No. 99); and (2)
Plaintiff Bounty Minerals' Motion to Strike the Motion for Leave to file *Amicus Curiae* Brief (Doc.
No. 100.) Defendants Chesapeake Exploration, LLC and Chesapeake Operating, LLC (hereinafter
"the Chesapeake Defendants") filed a Response to both motions. (Doc. No. 101.) For the following
reasons, the Motion for Leave to file *Amicus Curiae* Brief (Doc. No. 99) is DENIED and Plaintiff's
Motion to Strike (Doc. No. 101) the Motion for Leave is DENIED AS MOOT.

## I.      Background

The factual and procedural background of this matter has been presented in other decisions of
this Court and will not be repeated in full herein. Rather, the Court will only recite that factual and
procedural history necessary for a resolution of the above motions.

On July 11, 2017, Plaintiff Bounty Minerals, LLC (hereinafter "Plaintiff" or "Bounty Minerals") filed a Complaint against Defendants[1] in the Court of Common Pleas of Carroll County, Ohio, seeking to recover royalties it believes it is owed under the terms of several oil and gas leases. (Doc. No. 1-1.) Specifically, of relevance herein, Bounty Minerals sought relief relating to the following six leases:[2] (1) the December 16, 2010 and January 7, 2011 leases between Alan L. Miller and Ohio Buckeye Energy, LLC (hereinafter "the Miller Leases"); (2) the October 8, 2011 lease between Christopher and Sandi Ryland and Chesapeake Exploration (hereinafter "the Ryland Lease"); (3) the March 9, 2011 lease between Dean Cobbs and Chesapeake Exploration (hereinafter "the Cobbs Lease"); (4) the May 3, 2013 lease between Mark and Elizabeth Ingham and Chesapeake Exploration (hereinafter "the Ingham Lease"); and (5) the October 8, 2011 lease between Michael and Dana Ritchie and Chesapeake Exploration (hereinafter "the Ritchie Lease"). (*Id.*) It is undisputed that Bounty Minerals owns a partial, undivided interest in the Ryland, Ingham and Ritchie leases. Specifically, the deeds associated with these leases show that Bounty owns a 28.3367% interest in the Ryland lease; a 40% interest in the Ingham lease; and a 50% interest in the Ritchie lease. (Doc. Nos. 36-3 at PageID# 1724; 36-7 at PageID# 1779; 36-9 at PageID# 1811.) The record reflects that Bounty Minerals owns 100% of the Miller and Cobbs' leases. (Doc. Nos. 36-1, 36-5.)

---

[1] In its original Complaint, Bounty Minerals named three Defendants: Chesapeake Exploration, LLC; Chesapeake Operating, LLC; and Chesapeake Energy Marketing, LLC. (Doc. No. 1-1.) Bounty Minerals twice amended its Complaint. In its Second Amended Complaint (filed February 14, 2018), Bounty Minerals named only Chesapeake Exploration, LLC and Chesapeake Operating, LLC. (Doc. No. 36.)

[2] In this Complaint, Bounty Minerals also sought relief relating to a lease that was entered into between CAM-Ohio Real Estate, LLC, Leesville Land, LLC, and Hopedale Mining, LLC as lessors and defendant Chesapeake Exploration LLC as lessee and is dated March 6, 2012 (the "CAM-Ohio" lease). (Doc. No. 1-1 at ¶¶ 10, 11.) Bounty alleged that this lease was assigned to Bounty in April 2013. (*Id.* at ¶ 12.) In subsequent amendments of its Complaint, Bounty withdrew its claims regarding this particular lease. (Doc. Nos. 25, 36.) Thus, the CAM-Ohio lease is no longer before this Court.

In its original Complaint, Bounty Minerals asserted two breach of contract claims as well as a claim for declaratory judgment pursuant to Ohio Rev. Code § 2721.01 *et seq.* (*Id.*) Defendants removed the action to this Court on August 14, 2017, on the basis of diversity jurisdiction. (Doc. No. 1.)

Although required to do so, Defendants failed to indicate in the Civil Cover Sheet to the Notice of Removal that the instant action was related to an action pending before District Judge Benita Pearson, captioned *Zehentbauer Family Land LP, et al. v. Chesapeake Exploration LLC, et al.*, Case No. 4:15cv2449 (N.D. Ohio) (hereinafter "the *Zehentbauer* class action"). [3] That case (which remains pending before Judge Pearson) was filed as a Class Action Complaint in the Columbiana County Court of Common Pleas on October 30, 2015 and removed to the Northern District of Ohio on November 30, 2015. (Doc. No. 1.) The Class Complaint in *Zehentbauer* (1) asserts breach of contract claims against (among others) the same defendants herein (i.e., Chesapeake Exploration LLC and

---

[3] The instructions for Attorneys Completing the Civil Cover Sheet note that Section VIII of that form relates to "Related Cases" and provides as follows: "This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases." (Doc. No. 2 at PageID#260.) Defendants herein did not mark this case as related to the *Zehentbauer* case on the Civil Cover Sheet when they filed their Notice of Removal. (Doc. No. 2 at PageID#258.) Defendants assert that they properly notified the Court of the *Zehentbauer* case because they referenced that case in the Notice of Removal itself. The Court rejects this argument. Although Defendants refer to the *Zehentbauer* case in Paragraph 19 of the Notice of Removal, that reference was in support of Defendants' argument that the forum selection clause in the subject lease agreements did not waive federal jurisdiction. (Doc. No. 1 at pp. 4-5.) In this context, Defendants state in the Notice of Removal that "this Court recently denied plaintiffs' motion to remand to state court under lease language identical to the language in the leases at issue here because the 'forum selection clause at issue does not 'clearly and unequivocally' waive Defendants' right to removal.' *See Zehentbauer Family Land LP v. Chesapeake Exploration, LLC*, No. 4:15-cv-02449-BYP, 2016 WL 3903391, at *4 (N.D. Ohio July 19, 2016) (Pearson, J.)." (*Id.* at ¶ 19.) This sentence was not sufficient to place the Court on notice that the *Zehentbauer* case, in fact, involved the very same leases at issue in the instant case. Indeed, this sentence in Defendants' Notice of Removal could just as easily be interpreted as indicating that the leases in both cases involved the same forum selection clause language. It did not clearly apprise the Court that the *Zehentbauer* case included the same leases and involved the construction of the same oil and gas royalty provision language. Defendants' argument to the contrary is without merit.
.

Chesapeake Operating LLC); (2) includes some of the same leases at issue herein; and (3) involves nearly identical lease language to that at issue in the instant case. (Doc. No. 1-1.)

On July 20, 2018, Judge Pearson certified the following class of landowners in the *Zehentbauer* class action: "All persons entitled to royalty payments from Chesapeake Exploration, L.L.C., Chesapeake Operating, L.L.C., CHK Utica, L.L.C., Total E&P USA, Inc., Pelican Energy, L.L.C., and/or Jamestown Resources, L.L.C. at any time during the years of 2011 to the present under uniform oil and gas leases, known generally as Gross Royalty Leases, (some originally entered by Buckeye Exploration Corporation) which state that the lessors' royalty shall be the stated percentage of the gross proceeds received by the lessee without any deductions except for a pro-rata share of governmentally imposed taxes and fees, in return for granting rights to produce oil, natural gas, and the constituents thereof from real property located in Ohio. Excepted from the foregoing class are persons who have filed separate actions requesting the relief sought here and those who have resolved claims requesting the relief sought here. . . ." *Zehentbauer*, Case No. 4:15cv2449 (Doc. No. 123 at p. 18.) The Sixth Circuit later granted discretionary review and affirmed Judge Pearson's class certification decision. *See Zehenbauer Family Land LP, et al. v. Chesapeake Exploration LLC, et al.*, Case No. 18-4139 (6th Cir. Aug. 15, 2019).

Meanwhile, on February 14, 2018, Bounty Minerals filed its Second Amended Complaint in the instant action. (Doc. No. 36.) The Second Amended Complaint asserts the following alternative claims for relief: (1) breach of contract against all Defendants based on Defendants' alleged breach of the royalties provisions of the Miller, Cobbs, Ryland, Ritchie, and Ingham leases (Count I); (2) breach of contract claims against Defendant Chesapeake Exploration, LLC based on Defendant's alleged breach of the express covenant of good faith and reasonable prudent operator (Count II); and

(3) breach of contract against all Defendants based on Defendants' alleged breach of the affiliate sales provisions of the subject leases (Count III). (*Id.*)

Subsequently, on August 10, 2018, Bounty Minerals filed another Motion for Leave to Amend Complaint, in which it sought to add several new defendants. (Doc. Nos. 54, 55.) Specifically, Bounty Minerals sought to add CHK Utica, LLC; Total E&P USA, Inc.; and Pelican Energy, Inc., as Defendants, on the grounds that discovery had revealed that these entities have working interests in one or more of the subject leases. Arguing the proposed new defendants would destroy diversity jurisdiction, Bounty Minerals also sought remand to state court. (*Id.*) On February 26, 2019, the Court (through then-assigned District Judge Sara Lioi) issued an Opinion & Order denying Bounty Minerals' Motion for Leave to Amend and for Remand, finding that "the balance of equities compels the conclusion that Bounty Minerals should not be permitted to further amend its complaint to defeat jurisdiction." (Doc. No. 70 at p. 9.)

On April 12, 2019, the Chesapeake Defendants filed a Motion for Summary Judgment as to each of Plaintiff's claims. (Doc. No. 81.) Bounty Minerals filed a Brief in Opposition on May 3, 2019 (Doc. No. 83), to which the Chesapeake Defendants replied on May 17, 2019 (Doc. No. 84.)

On June 26, 2019, the case was transferred from then-assigned District Judge Sara Lioi to the undersigned pursuant to General Order 2019-13.

The following month, on July 25, 2019, class counsel in the *Zehentbauer* action filed, in the *Zehentbauer* case only, a Motion to Transfer the instant case to Judge Pearson. *See Zehentbauer*, Case No. 4:15cv2449 (N.D. Ohio) (Doc. No. 170). Therein, class counsel argued that "*Bounty Minerals* involves the exact same leases certified as subclass B in this case." (*Id.*) Specifically, class counsel asserted that, because Bounty Minerals owns only a partial, undivided interest in the Ryland,

Ritchie, and Ingham leases, those leases are included in the *Zehentbauer* certified class. (*Id*.) Class counsel also argued that, as a result, this Court (i.e., the undersigned) lacks subject matter jurisdiction over the Ryland, Ritchie and Ingham leases in the instant action. (*Id*.) Judge Pearson summarily denied the motion the same day. (Doc. No. 171.)

At this point in time, neither the parties to the instant action or class counsel in the *Zehentbauer* action had thought to notify this Court (i.e., the undersigned or previously assigned Judge Lioi) of the existence of the *Zehentbauer* case, or the possibility that the pendency of that action deprived this Court of subject matter jurisdiction over the Miller, Cobbs, Ryland, Ritchie, and/or Ingham leases.

On November 20, 2019, the Court scheduled oral argument regarding Defendants' Motion for Summary Judgment for December 13, 2019. *See* Non-document Order dated Nov. 20, 2019. On December 5, 2019, the Court issued a Notice advising the parties of the particular issues that it planned to address during oral argument. (Doc. No. 98.)

On December 10, 2019, just three days prior to oral argument, the *Zehentbauer C*lass filed a Motion for Leave to File *Amicus Curiae* Brief. (Doc. No. 99.) Therein, the *Zehentbauer* Class, for the first time, notified the Court of the existence of the *Zehentbauer* action and argued that "the matter before this Court involves seven of the hundreds of leases certified as subclass B in *Zehentbauer*." (*Id*. at p. 1.) The Class noted that Bounty Minerals owns only a partial, undivided interest in the Ryland, Ritchie, and Ingham leases and asserted that these particular leases involved the same lease language at issue in *Zehentbauer* and were included in that class action. (*Id*. at p.2.) The *Zehentbauer* Class further argued that "given that the Ritchie, Ryland, and Ingham leases are included in the certified class before Judge Pearson, this Court lacks subject matter jurisdiction over at least three of

the leases involved in *Bounty Minerals* because none of those parties sought to add clearly-necessary parties to the case, namely Bounty Minerals' co-lessors." (*Id.* at p. 3.)

Class counsel then argued that they were "deeply concerned about the completeness of the arguments which plaintiff Bounty Minerals has asserted before this Court and are concerned that the briefing here might lead to an adverse decision which, even though based upon incomplete arguments, would be utilized by resourceful defense counsel here to urge a similar decision by Judge Pearson." (*Id.* at p. 4.) The Class then proceeded to raise substantive arguments regarding what it believes to be the proper construction of the oil and gas royalty language at issue herein, most of which arguments were not raised by Bounty Minerals herein. (*Id.* at p. 5-8.) The Class sought leave to file a 25 page amicus brief setting forth its substantive arguments *instanter.* (Doc. No. 99-10.)

Bounty Minerals promptly filed a Motion to Strike the Motion for Leave to File *Amicus* Brief, arguing it was untimely and improper. (Doc. No. 100.) The Chesapeake Defendants filed a Response to both motions, in which it argued that (1) this Court possesses subject matter jurisdiction over the instant action and (2) the *Zehentbauer* plaintiffs' arguments did not constitute "proper amicus briefing." (Doc. No. 101.)

The Court ordered lead counsel for the *Zehentbauer* Plaintiff Class to attend the oral argument set for December 13, 2019. *See* Non-Document Order dated December 10, 2019. On that date, the Court heard argument from Bounty Minerals, the Chesapeake Defendants, and *Zehentbauer* Class counsel regarding the following issues: (1) whether this Court has subject matter jurisdiction over the Ryland, Ritchie, and Ingham leases in light of the certification of the class in *Zehentbauer*; and (2) whether Bounty Minerals' co-lessors to the Ryland, Ritchie and Ingham leases are indispensable parties pursuant to Fed. R. Civ. P. 19. Both Bounty Minerals and the Chesapeake Defendants argued

that the Court has subject matter jurisdiction over the instant action, and that Bounty's co-lessors were not indispensable. The Court also heard oral argument, from Bounty Minerals and the Chesapeake Defendants only, regarding Defendants' Motion for Summary Judgment.

The Court ordered the parties to submit supplemental briefing limited to the subject matter jurisdiction and indispensable party issues raised by the *Zehentbauer* class' Motion. As Bounty Minerals and the Chesapeake Defendants hold the same view on these issues, the Court found supplemental briefing from the *Zehentbauer* Class would assist the Court. Accordingly, the Court also provided the *Zehentbauer* Class the opportunity to submit supplemental briefing limited to the issues of subject matter jurisdiction and indispensable parties only. (Doc. No. 102.) Supplemental briefing was timely submitted by the parties and the *Zehentbauer* Class on December 20, 2019. (Doc. Nos. 103, 104, 105.)

## II. Analysis

### A. Subject Matter Jurisdiction

Prior to addressing the question of whether to permit the *Zehentbauer* Class to file its *amicus curiae* brief, the Court must first consider the threshold issue of whether it has subject matter jurisdiction over the instant action. For the following reasons, the Court concludes that it does.

The *Zehentbauer* Class' argument that this Court lacks subject matter jurisdiction over the instant case stems from the fact that Bounty Minerals owns only a partial, undivided interest in the Ryland, Ritchie, and Ingham leases. (Doc. No. 105.) The Class argues that Bounty's co-lessors (who own at least a 50%, or greater than 50%, interest in the leases at issue) are the "real parties in interest" and, therefore, are indispensable parties under Fed. R. Civ. P. 19(a). (*Id.*) Because those co-lessors have not been joined in this action and are already part of the *Zehentbauer* class, the Class asserts

8

that this Court lacks subject matter jurisdiction with respect to the Ryland, Ritchie, and Ingham leases. (*Id*.)

Both Bounty Minerals and the Chesapeake Defendants disagree. (Doc. Nos. 103, 104.) They assert that it is undisputed that this Court has diversity jurisdiction over the instant case because the amount in controversy exceeds $75,000 and the suit is between citizens of different states. (Doc. No. 103 at p. 5.) The Chesapeake Defendants further assert that, even if the co-lessors are necessary parties (which both Bounty and the Chesapeake Defendants dispute), "it is black-letter law that a failure to join necessary parties does not divest a court of subject matter jurisdiction." (*Id*. at p. 5-6.) In addition, Bounty Minerals notes that (1) the Miller and Cobbs' leases are undoubtedly within this Court's jurisdiction because Bounty is 100% owner of those leases; and (2) the co-lessors are permitted to opt-out of the *Zehentbauer* Class pursuant to Fed. R. Civ. P. 23(c)(2)(B) if they choose to do so. (Doc. No. 104 at pp. 1-2.)

As an initial matter, the Court finds that it is undisputed that this Court has subject matter jurisdiction over the Miller and Cobbs leases. The record reflects that Bounty Minerals is the full, 100% owner of these leases. (Doc. Nos. 36-1, 36-5.) Bounty Minerals filed the instant action (including claims regarding the Miller and Cobbs leases) in July 2017. (Doc. No. 1-1.) The Class certified by Judge Pearson in July 2018 expressly excludes: "persons who have filed separate actions requesting the relief sought here and those who have resolved claims requesting the relief sought here. . . ." *Zehentbauer*, Case No. 4:15cv2449 (Doc. No. 123 at p. 18.) Thus, it is clear that the Miller and Cobbs leases are not part of the *Zehentbauer* Class and that this Court has subject matter jurisdiction over these leases.

With respect to the Ryland, Ritchie, and Ingham leases, the Class asserts this Court lacks subject matter jurisdiction over these leases because Bounty's co-lessors should have been joined as indispensable parties under Fed. R. Civ. P. 19. The Court disagrees. As the Chesapeake Defendants correctly note, this Court's subject matter jurisdiction is not implicated by the alleged failure to join indispensable parties under Rule 19(a). *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 90 (2005) ("Neither Federal Rule of Civil Procedure 17(a), captioned 'Real Party in Interest,' nor Rule 19, captioned 'Joinder of Persons Needed for Just Adjudication,' requires plaintiffs or defendants to name and join any additional parties to this action. Both Rules, we note, address party joinder, not federal-court subject-matter jurisdiction.") (citing Rule 82 ("[The Federal Rules of Civil Procedure] shall not be construed to extend or limit the jurisdiction of the United States district courts ....")). *See also School Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 279 (6th Cir. 2009) (stating that "federal courts may, as a matter of discretion, raise required-party issues under Rule 19(a) on their own and may do so for the first time on appeal—even when the parties have forfeited the issue. . . . But that does not make the issue one of subject matter jurisdiction, which it is not.") (Sutton, J., concurring); *Downing v. Globe Direct LLC*, 682 F.3d 18, fn 5 (1st Cir. 2012) ("We note that the question of whether a suit must be dismissed due to the absence of an indispensable party is one of equity, not one that calls into question our subject matter jurisdiction.") (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1611 (3d ed. 2001 & Supp. 2012)). Moreover, as set forth *infra*, the Court finds that Bounty's co-lessors are not, in fact, necessary parties under Rule 19(a)(1).

Accordingly, the Court finds that has subject matter jurisdiction with respect to all the leases at issue herein; i.e., the Miller, Cobbs, Ryland, Ritchie, and Ingham leases. The *Zehentbauer* Class' argument to the contrary is without merit and denied.

### B. Indispensable Parties

The *Zehentbauer* Class' primary argument is that the co-lessors of the Ryland, Ritchie, and Ingham leases are indispensable parties under Rule 19(a). (Doc. No. 105.) The Class asserts that "[a]ll parties who have an interest in a contract are necessary parties to a lawsuit based on a breach of that underlying contract, as that party would be a person in whose absence complete relief cannot be accorded among those already parties. . ." (*Id.* at p. 2.) The Class further argues that "[t]he prejudice to Bounty's co-lessors and Defendants cannot be lessened or avoided" and "the disposition of the action in the co-lessor's absence may impair or impede their ability to protect their interest." (*Id.* at p. 5.)

Again, both Bounty Minerals and the Chesapeake Defendants disagree. (Doc. Nos. 103, 104.) Bounty Minerals asserts that it "is not seeking any form of relief from any other party or on behalf of any other party," noting "the only causes of action now in this suit are for breach of contract and the only relief that Bounty is seeking is monetary damages from Chesapeake based on payments to Bounty." (Doc. No. 104 at p. 3.) Bounty further argues that a ruling in the absence of the co-lessors will not impede their interests because "not only is Zehentbauer representing the co-lessors' interests in the *Zehentbauer* Litigation as part of the class, but those co-lessors have the right – if they so choose- to withdraw from the *Zehentbauer* class and pursue separate litigation against Chesapeake." (*Id.*) Bounty next argues that "while there is some risk that Chesapeake might face inconsistent determinations or obligations as a result of all of the litigation over its lease terms, that risk would

exist regardless of the presence or absence of the co-lessors in this suit." (*Id*. at p. 4.) Finally, Bounty maintains that, even if the co-lessors are necessary parties, "it is not feasible to join them, and equity and good conscience demand that the action proceed." (*Id*. at p. 6.)

The Chesapeake Defendants similarly argue that this Court can accord complete relief to Bounty without Bounty's co-lessors because "Bounty's damages claims are based on its individual rights and interests under the leases." (Doc. No. 103 at p. 6.) Second, the Chesapeake Defendants assert that "the mere fact that there are co-lessors potentially in the *Zehentbauer* Class does not deprive Bounty from being able to pursue its own interests." (*Id*. at p. 7.) In this regard, Defendants note that Judge Lioi denied Bounty's previous motion in this case to join as defendants Chesapeake's purported assignee and three working interest owners in the same leases. (*Id*.) Moreover, Defendants note that "despite long knowing about the existence of this case, the *Zehentbauer* plaintiffs have never moved under Rule 19 to join Bounty as a 'necessary party' in *Zehentbauer*." (*Id*. at p. 8.) Defendants next argue that "proceeding without the co-lessors will not 'as a practical matter impair or impede their ability to protect their interests in the Leases because "this Court's decision regarding the Lease language will affect only Bounty's claims and will have no preclusive effect on the co-lessors' class claims in *Zehentbauer*." (*Id*. at p. 9.) Finally, Defendants argue that "there is no 'substantial risk that Bounty and Chesapeake will be subject to 'inconsistent obligations.'" (*Id*. at p. 8.)

In determining whether a person is an indispensable party under Fed. R. Civ P. 19, the Sixth Circuit applies a three-part test. *Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1345 (6th Cir. 1993). First, courts "determine whether a person is necessary to the action and should be joined if possible." *Id*. This is determined through Rule 19(a), which provides as follows:

**(a) Persons Required to Be Joined if Feasible.**

**(1) Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "If the court finds that the absent person or entity falls within either one of these provisions, the party is thus one to be joined if feasible." *Keweenaw Bay Indian Cmty.*, 11 F.3d at 1345. However, "[i]f the court determines that the person or entity does not fall within one of these provisions, joinder, as well as further analysis, is unnecessary." *Local 670, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL–CIO*, 822 F.2d 613, 618 (6th Cir. 1987).

Steps two and three deal with personal jurisdiction and indispensability. *Keweenaw*, 11 F.3d at 1145. "If personal jurisdiction is present, the party shall be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court." *Local 670*, 822 F.2d at 618. Without personal jurisdiction, the court proceeds to the third factor, which examines the factors set forth in Rule 19(b) "to determine whether the court may proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party." *Id*. The factors determining indispensability are:

first, to what extent a judgment rendered in the person's absence might be prejudicial to [the person] or to those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence

will be adequate; fourth, whether the plaintiff will have an adequate remedy if the
action is dismissed for nonjoinder.

*Keweenaw*, 11 F.3d at 1346 (quoting *Local 670*, 822 F.2d at 618). The Sixth Circuit has noted that "[i]deally, all [the] parties would be before the court. Yet Rule 19 calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *Local 670*, 822 F.2d at 618 (quoting *Smith v. United Brotherhood of Carpenters and Joiners of America*, 685 F.2d 164, 166 (6th Cir.1982)). *See also Ward v. Auto-Owners Ins. Co.*, 2019 WL 3252964 at * 2 (N.D. Ohio July 19, 2019); *Sutter O'Connell Co. v. Whirlpool Corp.*, 2019 WL 2469202 at * 5 (N.D. Ohio June 13, 2019).

Applying the first step of the test articulated by the Sixth Circuit, the Court finds that Bounty's co-lessors on the Ryland, Ritchie, and Ingham leases are not necessary parties to the instant action. First, the Court agrees with Bounty and the Chesapeake Defendants that, pursuant to Rule 19(a)(1)(A), this Court will be able to accord complete relief among the existing parties to the instant action in the absence of Bounty's co-lessors. As Bounty notes, the Second Amended Complaint asserts breach of contract claims based on allegedly improper royalty payments made by Chesapeake to Bounty under the oil and gas royalty provisions of the subject leases. Bounty's breach of contract claims are based upon the Chesapeake Defendants' manner of calculating oil and gas royalty payments to Bounty pursuant to the royalty provision language in the Ryland, Ritchie, and Ingham leases. As these claims are specific to Chesapeake's method and manner of calculating royalty payments to Bounty (and not to any other potential co-lessors of the property), the Court finds that its determination of Bounty's claims will be based on Bounty's individual rights and interests under

the leases only. Thus, the Court will be able to accord complete relief as between the parties to this action in the absence of Bounty's co-lessors.

The cases cited by the *Zehentbauer* Class are either distinguishable or do not support the Class' position. In *Prosser v. XTO Energy, Inc.* 2013 WL 1786456 (S.D. Ohio Apr. 25, 2013), for example, the plaintiffs filed a complaint seeking a (1) a declaratory judgment that they own the entire fee simple interest in certain property located in Union Township, Belmont County, Ohio and (2) specific performance of an oil and gas lease they entered into with Defendant XTO Energy, Inc. ("XTO"). The court found that there was a "potential cloud upon title that is the center of the parties' dispute" relating to the specific oil and gas leases at issue. *Id.* at *1. The court concluded that the absent potential co-owners of the property in question were necessary parties because: "Plaintiffs in this case ask for a declaratory judgment that they own the entire fee simple interest in the subject property. But without joinder of the parties whose deed conveyance in 1983 is the source of the title discrepancy in this case, there can be no such determination. By adjudicating this case without parties who may have interest in the subject property, this Court does nothing more than place a further cloud on title." *Id.* at * 4.

The *Prosser* court's concerns are not relevant to the instant case, however, as there is no indication that there is any title dispute regarding the property which is the subject of the Ryland, Ritchie, and/or Ingham leases. Moreover, *Prosser* involved a declaratory judgment claim, whereas Bounty asserts only breach of contract claims relating to its individual rights and interests.[4]

---

[4] The *Zehentbauer* Class also cites *Peters v. Durroh*, 277 N.E.2d 69 (Ohio App. 10th Dist. 1971) and *Bowen v. West Va. Gas Corp.*, 3 S.E.2d 629 (W. Va. 1939). The Class' reliance on these cases is misplaced as neither case considered whether a party is necessary under Federal Rule of Civil Procedure 19. The *Zehentbauer* Class' reliance on *Soberay Mach. & Equip. Co. v. MRF Limited, Inc.*, 181 F.3d 759 (6th Cir. 1999) is also misplaced. In that case, the Sixth Circuit found that a party to a contract should have been joined as a necessary party under Rule 19(a)(1) because it "was a

Accordingly, and for all the reasons set forth above, the Court finds that, pursuant to Rule 19(a)(1)(A), the Court will be able to accord complete relief among the existing parties in the absence of Bounty's co-lessors.[5]  The *Zehentbauer* Class' arguments to the contrary are without merit and rejected.

The Court further finds that Bounty's co-lessors are not necessary parties pursuant to Rule 19(a)(1)(B).  Rule 19(a)(1)(B)(i) provides that a party is necessary and must be joined if the person claiming an interest relating to the subject of the action is so situated that disposing of the action in the person's absence may "as a practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i).  As discussed above, this Court's decision regarding the gas and royalty provisions in the Ryland, Ritchie, and Ingham leases will affect only Bounty's claims.  The co-lessor's interests in their leases with the Chesapeake Defendants are being represented by Zehentbauer as part of the *Zehentbauer* class.  Moreover, it is undisputed that, if the co-lessors so choose, they may elect to withdraw from the *Zehentbauer* Class and pursue separate litigation against the Chesapeake Defendants.  Accordingly, the Court finds that proceeding with the instant action without the co-lessors will not impair or impede their ability to protect their interests.

---

signatory to the contract for which Plaintiff seeks remuneration and for which Defendant had already paid [the absent party] in full."  *Id.* at 764.  Here, however, Bounty's breach of contract claims are predicated on specific manner in which Chesapeake calculated royalty payments to Bounty (and Bounty alone) pursuant to the lease oil and gas royalty provisions.  Thus, Bounty's interests in the lease are specific to it and not intertwined with any royalty payments that the co-lessors may have received.  The *Zehentbauer* Class' also cites *OneCommand, Inc. v. Beroth*, 2012 WL 3755614 (S.D. Ohio Aug. 29, 2012) for the proposition that "in general, the indispensable parties in a breach of contract action are the parties to the contract."  That case, however, is an employment case involving the alleged breach of a non-competition agreement, in which the court found that the defendant employee's new employer was not a necessary party because it was "not a party to the agreement at issue."  The court's holding is an entirely different context and does not speak to the issue of whether co-lessors to an oil and gas lease are indispensable parties under Rule 19.

[5] The Court notes that Bounty previously moved to add CHK Utica, LLC; Total E&P USA, Inc.; and Pelican Energy, Inc. as defendants in the instant action on the grounds that these entities have "working interest" in the very leases at issue herein.  Judge Lioi denied the motion in February 2019 (Doc. No. 70), which undercuts the *Zehentbauer* Class' argument that co-lessors are, by definition, necessary parties in a breach of contract action.

Finally, the Court finds that a disposition of the instant case in the absence of the co-lessors will not leave the Chesapeake Defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). As the Chesapeake Defendants themselves argue, "[i]f this Court and Judge Pearson reach inconsistent decisions about the Lease language, Chesapeake would be able to comply with both decisions because, after all, this is simply a case about money damages." (Doc. No. 103 at p. 9.) The Court agrees and, therefore, finds that the co-lessors are not necessary parties under Rule 19(a)(1)(B)(ii).

Accordingly, and for all the reasons set forth above, the Court finds that Bounty's co-lessors are not necessary parties under Rule 19(a)(1). In light of this finding, the Court need not consider steps two and three of the analysis set forth by the Sixth Circuit; i.e., personal jurisdiction and indispensability. *See Local 670*, 822 F.2d at 618.

## C. Motion for Leave to File *Amicus Curiae* Brief

The *Zehentbauer* Class argues it should be permitted to submit an amicus brief because the "ultimate issue" in both the instant case and the *Zehentbauer* case is the same; i.e., "whether the language in the Bounty Minerals leases, as well as the language in the *Zehentbauer* Class leases, clearly and unambiguously, as a matter of law, provides for the calculation of royalties based upon gross proceeds, without any deductions or expenses (including post-production costs) except for a pro-rated share of governmentally imposed taxes." (Doc. No. 99-1 at pp. 4-5.) The Class asserts that, in Bounty Minerals' response to the Chesapeake Defendants' summary judgment motion, Bounty "virtually ignores" key language in the oil and gas royalty provisions at issue and fails to "adequately discuss or analyze the 'affiliate sales' language of the leases." (*Id*. at p. 6, 7.) The

*Zehentbauer* Class requests "leave to aid the Court in reaching a just resolution according to Ohio contract law by granting their Motion to file an *Amicus Curiae* brief *instanter*." (*Id*. at p. 8.)

Not surprisingly, Bounty Minerals asks the Court to strike the *Zehentbauer* class' Motion. (Doc. No. 100.) First, Bounty argues that "the *Zehentbauer* Plaintiff Class is not seeking to participate as an amicus, but rather is functionally seeking to intervene in this suit in order to raise arguments not raised by any party." (*Id*.) Second, Bounty Minerals maintains that allowing the amicus brief would prejudice the parties by "injecting novel arguments months after the close of briefing on summary judgment less than three days before [oral] argument." (*Id*.) Finally, Bounty Minerals asserts that the *Zehentbauer* Class is incorrect that the litigants involved in this suit are part of the class-action litigation. (*Id*.)

The Chesapeake Defendants also argue that the *Zehentbauer* Class' arguments "are not proper 'amicus' briefing." (Doc. No. 101 at p. 2.) Noting that the *Zehentbauer* plaintiffs' interpretation of the leases at issue conflicts with Bounty Minerals' proposed interpretation, the Chesapeake Defendants assert that "the *Zehentbauer* plaintiffs' eleventh-hour attempt to inject new, conflicting arguments into this case should be rejected as improper 'amicus.'" (*Id*. at p. 3., 5)

The Federal Rules of Civil Procedure do not address motions for leave to appear as *amicus curiae* in a federal district court. Rather, the decision to allow an appearance as an *amicus* falls under the district court's inherent authority. *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). As one district court within this Circuit has explained, "[t]he role of an amicus is generally 'to aid the Court in resolving doubtful issues of law rather than present a partisan view of the facts.'" *Bancinsure, Inc. v. U.K. Bancorporation Inc*., 830 F.Supp.2d 294, 306 (E.D. Ky. 2011) (citing *Dow Chemical Co.*

*v. United States,* 2002 WL 33012185, at *1 (E.D. Mich. May 24, 2002) (citation omitted)).  Indeed, in describing the role of an *amicus curiae*, the Sixth Circuit has stated:

> Historically, '*amicus curiae*' was defined as one who interposes 'in a judicial proceeding to assist the court by giving information, or otherwise, or who conduct[s] an investigation or other proceeding on request or appointment therefor by the court.' Its purpose was to provide impartial information on matters of law about which there was doubt, especially in matters of public interest. The orthodox view of *amicus curiae* was, and is, that of an impartial friend of the court—not an adversary party in interest in the litigation.

*Michigan*, 940 F.2d at 164–65 (emphasis in original) (internal citations omitted).  *See also* 16AA C. Wright & A. Miller, Federal Practice and Procedure § 3975, p. 313 (2008) ("[A]n amicus ought to add something distinctive to the presentation of the issues, rather than serving as a mere conduit for the views of one of the parties."); *Freed v. Thomas*, 2018 WL 3848155 at * 2 (E.D. Mich. Aug. 9, 2018) (same).

In determining whether to grant leave to file amicus briefing, courts have considered a variety of factors, including whether the parties are adequately represented, whether the proposed amici have a cognizable direct interest in the outcome of the case, and whether the proposed amici would address matters or advance arguments different from those raised by the parties. *See Nat'l Air Traffic Controllers Corp Ass'n v. Mineta*, 2005 WL 8169395 at * 1 (N.D. Ohio June 24, 2005).  "District courts focus on both the usefulness of the brief and the timeliness of the brief."  *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 2017 WL 11454764 at * 1 (W.D. Mich. Oct. 30, 2017).

The *Zehentbauer* Class' Motion for Leave to File an Amicus Curiae Brief is denied.  First, the Court finds the Class' Motion is untimely.  As set forth *supra*, the summary judgment briefs in this matter were fully ripe seven months ago, in May 2019.  At the very latest, the Class was aware of the instant action in July 2019, when it filed a Motion before Judge Pearson to transfer the instant

19

case to her as related to the *Zehentbauer* action. The *Zehentbauer* Class offers no explanation for failing to promptly seek leave to file an amicus brief once Judge Pearson denied the motion on July 25, 2019. Nor has the Class offered any reasoned explanation for the fact that it waited to file its Motion until December 10, 2019, seven months after the summary judgment briefing was ripe and a mere three days before oral argument. As noted above, district courts may consider timeliness when deciding whether to allow amicus briefing. *See Kollaritsch*, 2017 WL 11454764 at * 1. Here, the *Zehentbauer* Class' Motion is clearly untimely. Allowing leave at this time would cause significant delay and, therefore, prejudice to the parties. The Court is unwilling to permit leave under these circumstances, particularly in the absence of any meaningful explanation for the Class' failure to timely file its Motion.

Second, the Court finds that the *Zehentbauer* Class' proposed amicus briefing regarding its proposed construction of the lease royalty provisions is not appropriate under the circumstances presented. As noted by the Sixth Circuit, "[a]micus . . . has never been recognized, elevated to, or accorded the full litigating status of a named party or a real party in interest, . . . and amicus has been consistently precluded from initiating legal proceedings, filing pleadings, or otherwise participating and assuming control of the controversy in a totally adversarial fashion." *Michigan*, 940 F.2d at 165 (internal citations omitted). Here, the *Zehentbauer* Class seeks to raise new legal theories and arguments that Bounty Minerals chose not to pursue and criticizes counsel for Bounty Minerals for its litigation strategy. This adversarial posture is not a proper function for an amicus and the Court finds that it would not be useful in resolving the issues presented. Indeed, it is clear to this Court that the driving force behind the *Zehentbauer* Class' Motion is not to assist the Court in any meaningful fashion, but to try to prevent an adverse ruling before Judge Pearson has the opportunity to rule on

20

the summary judgment briefing pending in *Zehentbauer*.  The Court declines to permit amicus briefing under these circumstances.

Accordingly, and for all the reasons set forth above, the Zehentbauer Class' Motion for Leave to file *Amicus Curiae* Brief (Doc. No. 99) is DENIED and Plaintiff's Motion to Strike (Doc. No. 101) the Motion for Leave is DENIED AS MOOT.

**IT IS SO ORDERED.**


 *s/Pamela A. Barker*
PAMELA A. BARKER
Date:  December 23, 2019                    U. S. DISTRICT JUDGE